UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEON LAMONT TAYLOR,

        Petitioner,

v.

MARY BERGHUIS,

        Respondent.

_____/

Case No. 15-11687

HON. MARK A. GOLDSMITH

### OPINION & ORDER
### (1) DENYING THE HABEAS PETITION (Dkt. 1),
### (2) DENYING A CERTIFICATE OF APPEALABILITY,
### AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Michigan prisoner Deon Lamont Taylor ("Petitioner") filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). The petition challenges Petitioner's Wayne County, Michigan convictions for three counts of solicitation of murder, Mich. Comp. Laws § 750.157b(2), and one count of conspiracy to commit first-degree murder, Mich. Comp. Laws § 750.157a; Mich. Comp. Laws § 750.316(1)(a). Petitioner alleges as grounds for relief that: (i) he was denied a fair trial by testimony that he had pleaded guilty to criminal sexual conduct in a related case, (ii) the trial court erred by allowing a deputy sheriff to testify about the alleged co-conspirator's statements, (iii) the trial court abused its discretion by refusing to charge the jury on attempted solicitation of murder, and (iv) the evidence at trial was insufficient. For the reasons stated below, the Court denies the petition for writ of habeas corpus, denies a certificate of appealability, and grants leave to appeal in forma pauperis.

### I. BACKGROUND

The state appellate court briefly summarized the pertinent facts as follows:

> Defendant's convictions arose out of his conspiracy and solicitation of the murders of two witnesses against him in a pending criminal sexual conduct case, as well as a family member of those witnesses. While he was incarcerated, defendant solicited one of his former associates, Carlas May, to effectuate the killings. Unbeknownst to defendant, May cooperated with the police and wore a recording device during one of his meetings with defendant. May also met with Kenisha Faison, defendant's co-conspirator, and recorded two conversations with her.

People v. Taylor, No. 313677, 2014 WL 1234150, at *1 (Mich. Ct. App. Mar. 25, 2014).

On October 4, 2012, a Wayne County Circuit Court jury found Petitioner guilty, as charged, of soliciting Carlas May ("May") to kill Petitioner's former girlfriend, his girlfriend's twelve-year-old daughter, and his biological son. The jury also found Petitioner guilty of conspiring with Kenisha Faison ("Faison") to kill his former girlfriend, his girlfriend's daughter, and his son. On November 15, 2012, the trial court sentenced Petitioner to concurrent terms of life imprisonment with the possibility of parole for the conspiracy conviction and 450 months (thirty-seven and a half years) to seventy years for the solicitation convictions. Petitioner raised his habeas claims in an appeal of right, but the Michigan Court of Appeals affirmed his convictions, see id., and on July 29, 2014, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. See People v. Taylor, 849 N.W.2d 379 (Mich. 2014).

On May 11, 2015, Petitioner filed his habeas petition. Respondent argues in an answer to the petition that Petitioner's claims are procedurally defaulted, waived, or not cognizable on habeas review and meritless. Resp't Answer in Opp'n to Pet. at i-iii, PageID.75-77 (Dkt. 7).

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). The

Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id</u>. at 102. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. <u>Id</u>. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. <u>See</u> <u>Wetzel v. Lambert</u>, 520 U.S. 520, 525 (2012).

"If this standard is difficult to meet, that is because it was meant to be." <u>Harrington</u>, 562 U.S. at 102. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. <u>Id</u>. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." <u>Id</u>. Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." <u>Woodford v. Viscotti</u>, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal courts, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington</u>, 562 U.S. at 103.

A state-court's factual determinations are presumed correct on federal habeas review. <u>See</u> 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with

clear and convincing evidence.  Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998).

Moreover, habeas review is "limited to the record that was before the state court."  Cullen v.

Pinholster, 563 U.S. 170, 181 (2011).

### III. ANALYSIS

#### A. Testimony about Petitioner's Guilty Plea

Petitioner alleges that he was denied a fair trial and due process of law when Detective

Sergeant Gary Wiegand testified that Petitioner had pleaded guilty in the underlying criminal-

sexual-conduct case.  The trial court had previously ruled that the prosecution could elicit some

testimony about the criminal-sexual-conduct case to show Petitioner's motive and intent in the

current case, but that it would be inappropriate to elicit testimony that Petitioner pleaded guilty to

the criminal-sexual-conduct charges, withdrew his plea, then pleaded guilty a second time, and

was convicted and sentenced.  The court advised the attorneys to caution their witnesses not to say

anything about Petitioner's guilty plea, conviction, and sentence in the criminal-sexual-conduct

case.  9/25/12 Trial Tr. at 12-14, PageID.274-276 (Dkt. 8-6).

Wiegand subsequently testified that, while he was attempting to verify information

provided by May, he learned that Petitioner had already pleaded guilty to criminal sexual conduct.

See 9/28/12 Trial Tr. at 212, PageID.836 (Dkt. 8-9).  The trial court excused the jury immediately,

and, in the jury's absence, Wiegand apologized for his error.  Although the trial court offered to

read a limiting instruction to the jurors, defense counsel declined the offer on the basis that it would

draw attention to Wiegand's comment.  Id. at 212-215, PageID.836-839.

Petitioner now claims that Wiegand's testimony bolstered the prosecution's argument that

the criminal-sexual-conduct case was the motive for the solicitation of murder and conspiracy.

Petitioner also contends that Wiegand's testimony portrayed him as a confessed sexual predator of children.  See Brief in Support of Pet. at 16, PageID.32 (Dkt. 1).

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error affecting substantial rights" because Petitioner failed to request a mistrial or to specify the grounds for his objection at trial.  The Court of Appeals went on to say that it was unlikely Petitioner suffered any significant prejudice from the comment because Wiegand's reference to Petitioner's guilty plea was brief.  The Court of Appeals also stated that Petitioner waived any error when he refused the trial court's offer to provide an immediate curative jury instruction and agreed that the trial court's jury instruction after the close of the proofs was adequate.  Taylor, 2014 WL 1234150, at *1.

### 1. Procedural Default

Respondent argues that Petitioner's claim is procedurally defaulted because the Michigan Court of Appeals reviewed the claim for "plain error."  A procedural default is "a critical failure to comply with state procedural law."  Trest v. Cain, 522 U.S. 87, 89 (1997).  Under the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  Martinez v. Ryan, 566 U.S. 1, 9 (2012).  In this Circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met:  (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default."  [Jalowiec v. Bradshaw, 657 F.3d 293, 302 (6th Cir. 2011)].  To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim."  Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

Henderson v. Palmer, 730 F.3d 554, 560 (6th Cir. 2013).

### 2. Application

The state procedural rule in question here is Michigan's contemporaneous-objection rule. This rule requires defendants in criminal cases to preserve their appellate claims by first moving for a mistrial on the same ground in the trial court, <u>People v. Alter</u>, 659 N.W.2d 667, 673-674 (Mich. Ct. App. 2003), or by specifically objecting on the same ground in the trial court. <u>People v. Carines</u>, 597 N.W.2d 130, 137-139 (Mich. 1999); <u>People v. Buie</u>, 825 N.W.2d 361, 374 (Mich. Ct. App. 2012).

At Petitioner's trial, it was the trial judge, not Petitioner, who interrupted Detective Wiegand mid-sentence when Wiegand mentioned Petitioner's guilty plea. Petitioner subsequently failed to request a mistrial or to make a specific objection to Wiegand's testimony, and he declined the trial court's offer to read a cautionary instruction to the jury. <u>See</u> 9/28/12 Trial Tr. at 212-215, PageID.836-839. Thus, the first procedural-default factor, failure to comply with a state procedural rule, is satisfied.

The second procedural-default factor is enforcement of the state procedural rule. The Michigan Court of Appeals was the last state court to adjudicate Petitioner's claim in a reasoned opinion, and it enforced the contemporaneous-objection rule by reviewing Petitioner's claim for "plain error." A state appellate court's review of a claim for "plain error" constitutes enforcement of a state procedural rule. <u>Hinkle v. Randle</u>, 271 F.3d 239, 244 (6th Cir. 2001) (citing <u>Seymour v. Walker</u>, 224 F.3d 542, 557 (6th Cir. 2000) (citing <u>Paprocki v. Foltz</u>, 869 F.2d 281, 284-285 (6th Cir. 1989)). Thus, the second factor is satisfied.

The third procedural-default factor is satisfied if the state procedural rule in question is an adequate and independent state ground for denying review of a federal constitutional claim. "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review." <u>Biros</u>

v. Bagley, 422 F.3d 379, 387 (6th Cir. 2005) (citing Abela v. Martin, 380 F.3d 915, 921 (6th Cir. 2004)). "Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule," Taylor v. McKee, 649 F.3d 446, 451 (6th Cir. 2011), and the Michigan Court of Appeals relied on the rule to preclude full review of Petitioner's claim. The third procedural-default factor is satisfied.

The fourth factor requires Petitioner to show "cause" for his failure to make the proper objection at trial and resulting prejudice. Petitioner has not advanced any argument in support of a finding of "cause and prejudice." The Court, therefore, deems the "cause and prejudice" argument abandoned. Roberts v. Carter, 337 F.3d 609, 613 (6th Cir. 2003) (citing United States v. Cofield, 233 F.3d 405, 407 (6th Cir. 2000)).

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim only if he can demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir. 2006) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence . . . any reasonable juror would have reasonable doubt." House v. Bell, 547 U.S. 518, 538 (2006).

Petitioner has not produced any new evidence that was not presented at trial, and the evidence against him was substantial. Consequently, a miscarriage of justice will not occur as a

result of the Court's failure to address the substantive merits of Petitioner's first claim. The claim is procedurally defaulted because all four factors constituting a procedural default have been satisfied.

### 3. Harmless Error

Even if Petitioner's claim were not procedurally defaulted, Detective Wiegand's testimony about Petitioner's guilty plea was harmless error. The comment was brief, and it was not mentioned again during Petitioner's five-day trial.

Furthermore, the jury was apprised of the fact that Petitioner had been accused of, or charged with, criminal sexual conduct involving his former girlfriend's young daughter. See, e.g., 9/28/12 Trial Tr. at 17, PageID.641 (the prosecutor's opening statement about the allegations of criminal sexual conduct made by the twelve-year-old target of Petitioner's current charges); id. at 51, PageID.675 (the former girlfriend's testimony that Petitioner went to jail on allegations that he sexually assaulted her twelve-year-old daughter); 10/2/12 Trial Tr. at 24-25, PageID.903-904 (Dkt. 8-10) (Detective Wiegand's testimony that Petitioner and Faison discussed how to convince the complaining witness in the criminal-sexual-conduct case to drop the charges); 10/3/12 Trial Tr. at 55-57, 68, PageID.1006-1008, 1019 (Dkt. 8-11) (May's testimony that Petitioner had said his former girlfriend was accusing him of molesting her and was trying to coerce her daughter into lying about him and that May later learned from Detective Wiegand that it was the daughter whom Petitioner had violated).

Additionally, the trial court charged the jurors that they could consider evidence of a crime for which Petitioner was not on trial only for limited purposes.[1] As examples of permissible uses

---

[1] The first sentence of the trial court's instruction on "other acts" evidence reads: "You have heard evidence that was introduced to show that the defendant committed a crime for which he is <u>now</u>

9

of the evidence, the court stated that the jurors could use the evidence when deciding whether the evidence showed that Petitioner had a reason to commit the crime, that he intended to cause murder to be committed, that he committed or helped to commit the crime, or that he acted purposefully. The court cautioned the jurors not to consider the evidence for any other purpose and not to conclude from the evidence that Petitioner was a bad person or likely to commit crimes. The court also stated that the jurors should not convict Petitioner because they thought he was guilty of other bad conduct. 10/4/12 Trial Tr. at 55-56, PageID.1185-1186 (Dkt. 8-12).

Jurors are presumed to follow a trial court's jury instructions, Richardson v. Marsh, 481 U.S. 200, 211 (1987), and the evidence against Petitioner was substantial. Therefore, the alleged constitutional error was harmless because it could not have had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

**B. The Co-Conspirator's Statements**

**1. Background**

Petitioner alleges next that the trial court erred by allowing deputy sheriff Jeffrey Budzynowski to testify about Faison's statements to May during their meetings on February 20, 2012. Faison was tried separately and did not testify at Petitioner's trial. Budzynowski, nevertheless, was permitted to testify, over defense counsel's objection, that Faison told May: (i) that she had talked to Petitioner and was aware of what was about to happen, (ii) that she was

---

on trial." 10/4/12 Trial Tr. at 55, PageID.1185 (Dkt. 8-12) (emphasis added). The word now probably was either a misstatement by the trial court or a clerical error made during preparation of the transcript. Given the context of the statement, the jury likely understood the trial court to say, "You have heard evidence that was introduced to show that the defendant committed a crime for which he is not on trial."

"okay" with the plan, (iii) that the intended victims would be home, and (iv) that Petitioner's former girlfriend slept in the basement of the residence. According to Budzynowski, Faison also provided May with the street address of the intended victims, and she offered to go to the intended victims' house with May when he went there to kill the victims. Additionally, Faison agreed to do surveillance on the house, and she promised to provide May with keys to the house. She told May that he should get the job done fast and then get out of the house and that she would enter the house because she knew where the insurance documents were kept. She cautioned May not to go near Nine Mile Road because of a police station there, and she recommended that May tie up Petitioner's former girlfriend because the woman was 6'3" tall and a kickboxer. 9/28/12 Trial Tr. at 151-159, PageID.775-783. Petitioner alleges that Budzynowski's testimony about Faison's statements to May was inadmissible hearsay and that the testimony violated his right to due process and his right to confront his accusers. See Brief in Support of Pet. at 22, PageID.38.

The state trial court ruled that there was sufficient proof independent of the conspiracy to admit the co-conspirator statements in evidence and that the statements were not hearsay under Michigan Rule of Evidence 801. 9/28/12 Trial Tr. at 149-150, PageID.773-774. The Michigan Court of Appeals likewise determined that Budzynowski's testimony was admissible under the Michigan Rules of Evidence because there was sufficient evidence of the conspiracy independent of Faison's statements to May. Taylor, 2014 WL 1234150, at *2. The Court of Appeals further concluded that the testimony did not violate Petitioner's right of confrontation because the statements at issue were not testimonial and did not implicate the Confrontation Clause. Taylor, 2014 WL 1234150, at *3.

### 2. Discussion

Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, usually are not questioned in a federal habeas corpus proceeding. <u>Cooper v. Sowders</u>, 837 F.2d 284, 286 (6th Cir. 1988). To the extent that any testimony violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review. <u>Hall v. Vasbinder</u>, 563 F.3d 222, 239 (6th Cir. 2009). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991).

One of Petitioner's sub-claims alleges that the disputed testimony violated his constitutional right to due process of law. A state trial court's evidentiary error can rise to the level of a federal constitutional claim warranting habeas corpus relief if the error was "so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." <u>McAdoo v. Elo</u>, 365 F.3d 487, 494 (6th Cir. 2004) (citing <u>McGuire</u>, 502 U.S. at 69-70). But "states have wide latitude with regard to evidentiary matters under the Due Process Clause," <u>Wilson v. Sheldon</u>, 874 F.3d 470, 476 (6th Cir. 2017), and for the following reasons, the state courts' rulings on Budzynowski's testimony were not contrary to federal law. Consequently, the alleged evidentiary error in admitting Budzynowki's testimony about the co-conspirator's statements did not rise to the level of fundamental unfairness.

Petitioner alleges that Budzynowski's testimony violated his right to confront Faison. The Sixth Amendment to the United States Constitution guarantees defendants in criminal cases "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, [her] prior testimony will be introduced only if the defendant had a prior opportunity

to cross-examine [her]." Giles v. California, 554 U.S. 353, 358 (2008) (citing Crawford v. Washington, 541 U.S. 36, 68 (2004)). In other words, "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford, 541 U.S. at 68.

"The Confrontation Clause is more rigid than the hearsay rule in terms of exceptions, but it applies to testimonial statements only," United States v. Reynolds, 684 F. App'x 510, 514 (6th Cir. 2017), and "statements made by a coconspirator 'by their nature [are] not testimonial.'" United States v. Damra, 621 F.3d 474, 492 n.4 (6th Cir. 2010) (quoting Crawford, 541 U.S. at 51). Statements made unwittingly to a confidential informant and recorded by the government also are not testimonial. See Davis v. Washington, 547 U.S. 813, 825 (2006) (citing Bourjaily v. United States, 483 U.S. 171, 181-184 (1987), for the principle that statements made unwittingly to a Government informant are nontestimonial); see also United States v. Johnson, 581 F.3d 320, 325 (6th Cir. 2009) (collecting cases which hold that statements made unwittingly to confidential informants and recorded by the government are not testimonial for Confrontation Clause purposes).

There was considerable evidence at Petitioner's trial that Faison was his co-conspirator. In addition, it is clear from the testimony at trial that Faison did not know May was a confidential informant or that her statements to May were being recorded. Because she unwittingly made statements to May and because there was evidence that she conspired with both May and Petitioner, her statements to May were not testimonial, and Petitioner's claim under the Confrontation Clause fails.

### C. The Trial Court's Denial of the Request for a Jury Instruction on Attempt

In his third habeas claim, Petitioner alleges that the trial court abused its discretion and violated his right to due process of law and a fair trial by refusing to instruct the jury on attempted solicitation of murder.  See Brief in Support of Pet. at 30, PageID.46; see also 10/4/12 Trial Tr. at 3-6, PageID.1132-1135.  Although Petitioner asserts that there was evidentiary support for the instruction, the Michigan Court of Appeals disagreed and concluded on review of Petitioner's claim that the trial court did not abuse its discretion by refusing to instruct the jury on attempt to solicit murder.  Taylor, 2014 WL 1234150, at *4.

Not every deficiency in a trial court's jury instructions rises to the level of a due process violation.  Middleton v. McNeil, 541 U.S. 433, 437 (2004).  Furthermore, the United States Supreme Court has not determined whether the failure to give jury instructions on lesser-included offenses in non-capital cases such as this one violates the right to due process.  See Beck v. Alabama, 447 U.S. 625, 638 n.14 (1980) (stating that "[w]e need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case").  Thus, a "failure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'"  Scott v. Elo, 302 F.3d 598, 606 (6th Cir. 2002) (quoting Bagby v. Sowders, 894 F.2d 792, 797 (6th Cir. 1990) (en banc)).

Even if this case were deemed comparable to a capital case, a jury instruction on a lesser-included offense is not required when the evidence does not support it.  Campbell v. Coyle, 260 F.3d 531, 541 (6th Cir. 2001) (citing Spaziano v. Florida, 468 U.S. 447, 454-457 (1984)).

Here, the evidence did not support a jury instruction on attempted solicitation of murder. As pointed out by the Michigan Court of Appeals,

> [t]he record reveals no evidence that defendant only attempted to solicit the murder of the proposed victims. Rather, the only evidence presented was that defendant sought out May and gave him directions to the victims' house and the means to obtain keys to the house. Defendant also gave May directions with regard to whom to kill first, discussed payment for the murders, and told May the best escape route for avoiding police officers. As soon as defendant asked May to commit the murders, the offense was complete.

Taylor, 2014 WL 1234150, at *4.

Petitioner's defense theory, moreover, was not that he merely attempted to solicit May. Instead, he argued that May was a professional scammer who engaged him in conversation for his own benefit, that is, to get out of jail. Petitioner also maintained that his discussions with May were mere "macho" jailhouse talk. 10/4/12 Trial Tr. at 31-35, 40-41, PageID.1160-1164, 1169-1170. In other words, his defense was that he never intended for May to kill anyone, and, as the Michigan Court of Appeals pointed out on review of Petitioner's claim,

> [a]ttempt requires a specific intent to do an act. People v. Jones, 443 Mich. 88, 100, 504 N.W.2d 158 (1993). If defendant did not intend for May to murder anyone, he would not have been guilty of an attempted solicitation because he never would have intended for the solicitation to occur. See id.

Taylor, 2014 WL 1234150, at *4.

The Michigan Court of Appeals reasonably concluded "that the evidence did not support an attempt instruction, and [that] the trial court did not abuse its discretion by declining to give the instruction." Id. For the same reasons, this Court finds that Petitioner's rights to due process and a fair trial were not violated by the lack of a jury instruction on attempt. Therefore, even if Petitioner's claim were cognizable on habeas review, he has no right to habeas relief on his claim.

### D. The Sufficiency of the Evidence

In his fourth and final claim, Petitioner alleges that there was insufficient evidence at trial that he solicited murder or conspired to murder anyone and, therefore, the trial court should have

granted his motion for a directed verdict of acquittal. According to Petitioner, his conversations with May and Faison were "macho" talk, which reflected his frustration and anger with being wrongfully accused of criminal sexual conduct. Petitioner concedes that his goal may have been to dissuade the complaining witness in the criminal-sexual-conduct case from testifying, but he contends that recordings of his conversations with May and Faison failed to establish an intent to solicit a murder or a conspiracy to murder someone. Petitioner urges the Court to give little or no weight to Detective Wiegand's testimony. Petitioner also contends that May manipulated him and Faison and created the illusion of a conspiracy for his own personal gain. See Brief in Support of Pet. at 35, 39-42, PageID.51, 55-58. The Michigan Court of Appeals disagreed with Petitioner and concluded that there was sufficient evidence to support Petitioner's convictions. Taylor, 2014 WL 1234150, at *5.

### 1. Clearly Established Federal Law

The Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Following Winship, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

Jackson v. Virginia, 443 U.S. 307, 318-319 (1979) (internal citations and footnote omitted) (emphases in original).

The Supreme Court has "made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. Id. (quoting Cavazos v. Smith, 565 U.S. 1, 2 (2011). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Id. (quoting Cavazos, 565 U.S. at 2); see also Tanner v. Yukins, 867 F.3d 661, 672 (6th Cir. 2017) (explaining that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court").

### 2. Solicitation to Commit Murder

The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. Petitioner was charged with three counts of solicitation to commit murder. Under state law, the word "solicit" "means to offer to give, promise to give, or give any money, services, or anything of value, or to forgive or promise to forgive a debt or obligation." Mich. Comp. Laws § 750.157b(1).

> Solicitation to commit murder is a specific intent crime that requires proof that the defendant intended that a murder would in fact be committed. People v. Vandelinder, 192 Mich. App. 447, 450, 481 N.W.2d 787 (1992). Solicitation to commit murder occurs when (1) the solicitor purposely seeks to have someone killed and (2) tries to engage someone to do the killing. Id. Solicitation is complete when the solicitation is made. Id. A contingency in the plan may affect whether the victim will be murdered, but does not change the solicitor's intent that the victim be murdered. Id. at 450-451, 481 N.W.2d 787. Actual incitement is not necessary for conviction. People v. Salazar, 140 Mich. App. 137, 143, 362 N.W.2d 913

(1985) (a defendant who attempted to incite an undercover police officer to commit murder could not escape conviction merely because the officer would not actually kill                                                                                          someone).

People v. Crawford, 591 N.W.2d 669, 673-674 (Mich. Ct. App. 1998).

The Michigan Court of Appeals stated in Petitioner's case that "the prosecution presented sufficient evidence that defendant solicited May to kill the victims and that defendant entertained the requisite intent that murder would be committed." Taylor, 2014 WL 1234150, at *5. In reaching this conclusion, the Court of Appeals pointed out that

> Defendant sought out May, asked him "can you handle this?" and discussed the killings with him approximately four or five times. After May initially tried to dissuade defendant from seeking to have the victims murdered, defendant persisted. Defendant offered May $120,000 for the killings, and discussed the manner in which he wanted May to kill the victims. Defendant also told May the layout of the victims' home and which victim he should kill first.

Id.; see also 9/28/12 Trial Tr. at 132-143, PageID.756-767 (Deputy Sheriff Budzynowski's description of Petitioner's conversations with May).

A rational trier of fact could have concluded from this evidence, taken in the light most favorable to the prosecution, that Petitioner wanted to have certain individuals killed and that he tried to convince May to commit the murders in return for a monetary reward. Petitioner's conduct went beyond "macho" talk or a verbal wish that someone were dead so that his criminal-sexual-conduct case would be dismissed. He made a specific offer of a reward for the killings, and he provided May with instructions on whom to kill and how May could accomplish the killings.

Although Petitioner challenges May's credibility and maintained at trial that May was a scam artist, an assessment of a witness's credibility generally is "beyond the scope of federal habeas review of sufficiency of evidence claims." Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003). In sufficiency-of-the-evidence challenges, the Court does "not reweigh the

evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."

Tanner, 867 F.3d at 672.

Here, the Michigan Court of Appeals reasonably concluded that "the prosecution presented sufficient evidence that defendant purposefully sought to have the victims killed and that he tried to engage May to do the killing." Taylor, 2014 WL 1234150, at *5. Because this conclusion was not contrary to, or an unreasonable application of, Jackson, Petitioner has no right to relief on the basis of his challenge to the sufficiency of the evidence supporting his solicitation-of-murder claim.

### 3. Conspiracy

Petitioner also was convicted of conspiracy to commit murder. Under Michigan law,

> [c]riminal conspiracy is a specific intent crime which arises from a mutual agreement between two or more parties to do or accomplish a crime or unlawful act. People v. Atley, 392 Mich 298, 311; 220 NW2d 465 (1974). The gist of a criminal conspiracy is the specific, mutual agreement to perform the crime in question; the conspiracy statute provides punishment for the actual advance planning and agreement to perform the substantive criminal acts. Id.

People v. Hammond, 466 N.W.2d 335, 337 (1991) (quoting People v. Gilbert, 455 N.W.2d 731, 735 (1990)).

"All the requisite elements of the crime of conspiracy are met when the parties enter into the mutual agreement, and no overt acts necessarily must be established." People v. Hamp, 312 N.W.2d 175, 180 (1981). "To prove a conspiracy to commit murder, it must be established that each of the conspirators ha[d] the intent required for murder and, to establish that intent, there must be foreknowledge of that intent." Id.

> [D]irect proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties. See, e.g., People v. Brynski, 347 Mich. 599, 81 N.W.2d 374 (1957). Inferences may be made because such evidence sheds light on the coconspirators' intentions.

People v. Justice, 562 N.W.2d 652, 659 (Mich. 1997) (footnote omitted).

The evidence in this case, as summarized by the Michigan Court of Appeals, established

that

> Faison visited defendant in jail on several occasions, and during these visits,
> defendant and Faison discussed how they could have the criminal sexual conduct
> charges against defendant dismissed. During one conversation, defendant referred
> to an associate who would soon be released from incarceration. Subsequently,
> Faison met with May, who she believed was recently released from incarceration,
> and discussed the killings. On that same day, defendant and May discussed the
> killings. In their respective meetings with May, both Faison and defendant assured
> May that Faison was involved in the plot to kill the proposed victims. Additionally,
> Faison assisted May in the manner defendant said she would, as she provided May
> with a key to the proposed victims' house, as well as directions to the house and
> instructions for committing the murders.

Taylor, 2014 WL 1234150, at *5.

There was other evidence that Faison sent a letter to Petitioner while he was in jail for the

criminal-sexual-conduct charges. In the letter, Faison wrote:

> I will never leave your side, ever. I'm going to have someone take care of
> [Petitioner's former girlfriend]. I promise you that. She means nothing to me and
> she is a liar, sneaky and [doesn't] deserve to be living. I'm just so outraged about
> everything.

10/2/12 Trial Tr. at 48, PageID.927.

A rational trier of fact could have concluded from all the evidence taken in the light most

favorable to the prosecution that Petitioner entered into an agreement with Faison to have the

intended victims murdered. Thus, the evidence was sufficient to support Petitioner's conspiracy

conviction, and the state court's decision was not contrary to, or an unreasonable application of,

Jackson. Petitioner has no right to relief on the basis of his challenge to the sufficiency of the

evidence supporting his conspiracy conviction.

### E. Certificate of Appealability and Leave to Proceed In Forma Pauperis on Appeal

Petitioner may not appeal the Court's denial of his habeas petition unless a district or circuit judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack, 529 U.S. at 484.

Reasonable jurists could not find it debatable whether the petition states a valid claim of the denial of a constitutional right or whether the Court was correct in its procedural ruling on Petitioner's first claim. Reasonable jurists also could not find the Court's assessment of Petitioner's remaining claims debatable or wrong. Accordingly, the Court will deny a certificate of appealability. The Court, nevertheless, will allow Petitioner to proceed in forma pauperis on appeal because the Court granted him permission to proceed in forma pauperis in this Court (Dkt. 4), and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

## IV. CONCLUSION

For the reasons stated above, the Court denies the petition for writ of habeas corpus (Dkt. 1), denies a certificate of appealability, and grants leave to proceed in forma pauperis on appeal.

SO ORDERED.

Dated: July 16, 2018               s/Mark A. Goldsmith
     Detroit, Michigan          MARK A. GOLDSMITH
                               United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 16, 2018.

                        s/Karri Sandusky
                        Case Manager